RANDY R. REED, III, [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Reed v. Commissioner
Docket No. 16675-87.
United States Tax Court
T.C. Memo 1988-470; 1988 Tax Ct. Memo LEXIS 495; 56 T.C.M. (CCH) 363; T.C.M. (RIA) 88470; September 27, 1988. Harvey L. Warren, III, for the petitioner. David E. Whitcomb, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency of $ 4,807 in petitioner's Federal income tax for taxable year 1983. The sole issue to be decided is whether petitioner's activities as a treasure hunter and marine archaeological explorer *496 were engaged in for profit. FINDINGS OF FACT Some of the facts have been stipulated are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. Petitioner was single and resided in Nederland, Texas during 1983. He filed his Federal income tax return with the Internal Revenue Service Center in Austin, Texas for the taxable year at issue. During 1983 petitioner was employed by E. I. DuPont de Nemours and Company (DuPont) as a chemical processor. He worked 12 hour shifts on a staggered schedule which provided for extended periods of time off. A typical work schedule for a month would include at least one stretch of eight consecutive days in which petitioner was not required to work, along with several three-day periods of non-work. In 1983 petitioner had 176 nonworking days. Petitioner was an experienced scuba diver. He was certified as an advanced open water instructor by Scuba Schools International. Additionally he held two teaching certificates from the Professional Association of Diving Instructors, one for the specialty of wreck and marine archaeology. Petitioner used his diving skills as a source of additional income *497 in previous years. In 1976 he was employed by a firm called Offshore Diving as a lead diver. This firm inspected ships and raised sunken tugboats. In 1977 and 1978 petitioner was employed by the Orange County Sheriff's Department as a rescue diver and was called in on special situations requiring his skills in black-water diving. From 1977 through 1979, while he was employed by DuPont working staggered shifts, petitioner operated a scuba dive shop. As part of the operations of the dive shop, petitioner taught for a fee many aspects of scuba diving, including sport diving and the techniques of treasure hunting. During this time petitioner did not engage either in sport diving or treasure hunting in his spare time or for personal recreation. Much of petitioner's treasure hunting teaching was done in conjunction with archaeologists from Texas A & M University on shipwrecks in the Mediterranean. As a result of his teaching efforts, petitioner certified two divers who have since appeared in National Geographic magazine. In addition, five divers that petitioner certified became millionaires from their treasure hunting successes. Captain Bob Jordan, who petitioner instructed, certified *498 and provided with equipment through the scuba dive shop, located a shipwreck with treasure worth over 80 million dollars. In 1979 petitioner closed the scuba dive shop with the intent of entering the business of treasure hunting with a friend. This friend traveled to England alone and did not return. It was not until 1983 that petitioner decided to go into the treasure hunting business by himself. He opened a separate bank account under the name "SCUBA Dive Shop Limited" for his new treasure hunting business and purchased a new 26-foot Carver boat. Petitioner decided to purchase a new boat after surveying his specific needs for a craft. The boat had particularly high sides to help secure the large amount of equipment required in treasure hunting (i.e., air tanks, buoy markers, metal detecting devices, etc.). The boat was suitable for sleeping but not for cooking due to the gasoline engine. The boat was not suitable for water skiing or fishing and was not used for purposes other than treasure hunting. Petitioner maintained receipts and check stubs for the limited additions made to the boat. Petitioner researched the locations of catastrophic shipwrecks dating from the sixteenth *499 through the nineteenth centuries through different U.S. Government agencies including the National Archives, U.S. Navy Historical Department, and the Library of Congress. In addition, his research included tracking down rare books and rare maps, along with personally interviewing experts. Petitioner learned over time the more reliable sources of information and narrowed his research efforts to these sources. At one point in 1983 petitioner traveled to the Cayman Islands in search of a rare book. On this trip he also visited archaeological experts in an attempt to obtain information that would assist him in distinguishing a shipwreck for which he was currently searching from one that had been previously located in the same vicinity. Petitioner represented to customs officials that his travel to the Cayman Island was for business purposes. Petitioner utilized state-of-the-art metal detecting devices while searching for shipwrecks, and was pioneering the use of infrared aerial photography as a new search technique. In addition to achieving his diving credentials, petitioner took flying lessons to enable himself to use aerial photography, and taught himself about electronics. *500 He also took classes over an eight-year period at Lamar University studying marine geology, marine archaeology and other similarly related courses. Although other notable explorers searched between eleven and seventeen years before locating a substantial shipwreck, petitioner estimated that he could cut this time frame down to approximately eight years due to his new techniques, extensive experience and education. Petitioner has located several shipwrecks, though none of substantial value. He retrieved several artifacts in 1983 but has not sold any. While these artifacts may have some historical significance, they are of limited marketability. Petitioner did not report any gross income from his treasure hunting activities in 1983. Other than retaining check stubs and receipts for his expenditures, petitioner did not maintain formal records for his business. For several months he kept an informal log of his activities. Petitioner's maps which he used in conjunction with his log were stolen. Thereafter he began to encode the log for security reasons, but found it difficult to maintain and stopped keeping a log altogether. Petitioner felt that he needed to keep his activities *501 secret. Petitioner was aware of burglaries of homes and safety vaults of other treasure hunters who were suspected of having located a valuable shipwreck. For this reason petitioner feared for the safety of his parents with whom he lived and opted to maintain as few written records as possible. He took steps to keep his boat and equipment from public view and took precautionary measures to maintain the secrecy of his search areas. Petitioner deducted $ 11,851 of expenses stemming from his treasure hunting activities in 1983 which respondent disallowed. OPINION The determinations of respondent in the statutory notice of deficiency are presumptively correct and petitioner has the burden of proving otherwise. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). [2]
The parties have stipulated that the expenses for which the corresponding deductions are in question have been satisfactorily substantiated. Thus, the sole issue for decision *502 is whether the expenses incurred through petitioner's treasure hunting activities constituted expenses incurred in a trade or business under section 162, or incurred for the production of income under section 212 so as to entitle petitioner to deduct these expenses. [3] Both of these sections require that the taxpayer have a profit motive for engaging in the activity for which the expenses are incurred. Whether petitioner's treasure hunting activity was engaged in for profit depends upon whether he engaged in the activity with an actual and honest objective of making a profit. Dreicer v. Commissioner,78 T.C. 642, 646 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). *503 Petitioner's expectation of profit need not have been a reasonable one, but he must have entered into the activity, or continued it, with the objective of making a profit. Section 1.183-2(a), Income Tax Regs.; Golanty v. Commissioner,72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Profit objective is a question of fact to be determined from all of the facts and circumstances. Allen v. Commissioner,72 T.C. 28, 34 (1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). Profit objective is to be determined on an objective basis. Engdahl v. Commissioner,72 T.C. 659, 666 (1979). Mere declarations of subjective intent, without more, are not sufficient to prove that an activity was engaged in for profit. Siegel v. Commissioner,78 T.C. 659, 699 (1982). The facts surrounding petitioner's treasure hunting activities corroborate his subjective statements of his profit objective. Petitioner operated his treasure hunting activities as a sole practitioner. As such, he set up a checking account separate *504 from his personal account, maintained receipts and check stubs for his expenditures, and based his searching on private maps. He had maintained a partial log book of his activities until his valuable maps had been stolen and petitioner determined that keeping the log books was imprudent. Petitioner believed that secrecy was important to his success. While not extensive, these records were adequate for a sole practitioner of this type with a low volume of transactions. Petitioner went to great lengths to develop the specialized skills and knowledge requisite of this field of archaeological exploration. He surrounded himself with experts in the field and experimented with new search techniques involving infrared aerial photography to increase the likelihood of his opportunities for success and to shorten the anticipated timespan for discovering a substantial shipwreck. Petitioner applied his skills in a systematic manner to the process of treasure hunting which involved running grid patterns in open water based upon compass readings while trolling metal detection devices from the stern of the boat and marking with buoys potential positive reading sites. Additionally petitioner *505 conducted extensive research to narrow his search areas thereby increasing the likelihood of success. Petitioner had been personally involved in the training of five divers in the field of treasure hunting who have since discovered substantial shipwrecks, each valued over one million dollars and one valued over 80 million dollars. These discoveries played a large role in petitioner's decision to close his scuba dive shop and devote his attention to treasure hunting on a personal level. Respondent contends that petitioner engaged in diving for many years without regard to its profitability and for this reason petitioner entered into and continued his treasure hunting activity for recreational reasons. We disagree. The record indicates that prior to the personal treasure hunting activities in 1983, petitioner was paid for engaging his diving skills. He did not participate in sport diving for recreational purposes other than when he was teaching such diving for a fee. Moreover, when diving personally for treasure, petitioner was at no time accompanied by a friend to make his ventures more recreational. The record does not indicate that petitioner's diving activities were motivated *506 by recreational intentions. Example (5) of section 1.183-2(c), Income Tax Regs., recognizes that a taxpayer can be engaged in an activity for profit even when there is only the rare possibility of profit. However, this is true only if the profit which may be derived is generally a very large return from such activity. Activities of treasure hunting admittedly culminate in successful discoveries on only rare occasions. Petitioner's steps in acquiring skills and knowledge to better his odds, coupled with his first-hand knowledge of the substantial profits that can be derived from this activity, lead us to conclude that petitioner's activities were conducted with an actual and honest profit objective. As such, petitioner is entitled to the deductions under section 212(1). Decision will be entered for petitioner.
Footnotes
1. The statutory notice of deficiency, petition and all subsequent documents referred to petitioner as Randy R. Reed, III; however he was sworn in at trial as Randolph R. Reed, III. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the cases of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; * * * ↩